COLUMBUS & G. RY. CO. v. ADMINISTRATOR OF WAGE AND HOUR DIVISION, UNITED STATES DEPARTMENT OF LABOR.

No. 9857.

Circuit Court of Appeals, Fifth Circuit.

Feb. 28, 1942.

---

and Julian J. Willingham, of Augusta, Ga., for petitioner.

Irving J. Levy, Acting Sol., U. S. Department of Labor, William W. Cox, and Louis Sherman, Attys., U. S. Department of Labor, all of Washington, D. C., for respondent.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

HUTCHESON, Circuit Judge.

By a petition to review and to modify or set aside, in whole or in part, as it affects them, petitioner and intervenor, bring in question, a minimum wage order, dealing with the railroad carrier industry as a whole, classifying it as composed of a trunk, and a short, line division, and establishing a minimum hourly wage of thirty-six cents for the former and of thirty-three for the latter. Of all the carriers involved in the hearing and affected by the order, petitioner and intervenor alone complain of it and ask its modification. Having a gross annual operating revenue of more than $1,000,000 each, and a line of railroads, respectively 167.7 and 399 miles long, petitioner and intervenor were classified in the trunk line division and made subject to the thirty-six cents minimum, with the result of an added annual expense to the Mississippi road of $30,000 and to the Georgia and Florida road of $28,500.

Complainants concede that the constitutionality in general of the act and of the procedure which resulted in the order, have been settled in United States v. Darby, 312 U.S. 100, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430, and in Opp Cotton Mills v. Administrator, of Wage and Hour Division, 5 Cir., 111 F.2d 23; Id., 312 U.S. 126, 657, 61 S.Ct. 524, 85 L.Ed. 624. They attack the order on narrower constitutional and statutory grounds. The statutory grounds are that the provisions of the statute governing industry classification and the determination of the wage rate for each classification were disregarded and therefore the order was invalid as in violation of the statute. The constitutional grounds are that if the statute be construed as authorizing the procedure taken and the result obtained here, then the statute is unconstitutional as depriving complainants of their property without due process in violation of the Fifth Amendment.

The attack upon the order, while vigorously urged as to all the grounds [1] comes

R. C. Stovall, Gen. Counsel, of Okolona, Miss., Rufus Creekmore, of Jackson, Miss.,

---

[1] (a) That the industry was not properly defined in that it did not include motor carriers and other agencies in active and hurtful competition with the rail-

to a focus in the attack upon (1) the definition of the industry as unduly restrictive, (2) the classification within the industry as arbitrary and as based upon factors which had no real or substantial relation to the ability of those within the classification to stand the wage rate; (3) the consideration of the economic and competitive conditions in the industry, not independently of but only as affecting curtailment of employment, and (4) the inclusion of complainants in the classification which is subjected to the thirty-six cent rate, both because their particular conditions took them out of the class and because the application of the rate to them will, in violation of the statute, substantially curtail employment on their lines.

The administrator, on his part, flatly insists (1) that the definition of and the classification within, the industry, was natural, reasonable and appropriate; (2) that upon every factor making them up, complainants come within both definition and classification; (3) that it is clear from the statute, as it plainly reads and as it has been interpreted, that the ultimate determination to be made by the administrator, is whether and only whether an increase of the wage rate above thirty cents and not above forty cents per hour, can be made without substantially curtailing employment in the industry; and (4) that economic and competitive conditions are only two of the factors to be considered in arriving at that determination. Meeting complainants' contention that the evidence does not show that employment will not be substantially curtailed on their lines, the administrator insists that the record sufficiently supports his finding that it will not, but that if this is not so this would not affect the validity of the order,

for its validity depends not upon its effect upon employment on a particular railroad, but in the industry as a whole; and the evidence is overwhelming, indeed it is not disputed, that employment in the industry as a whole will not be substantially curtailed by the order. To complainants position that the administrator failed to find that the wage rates ordered are necessary for the maintenance of a minimum standard of living of employees affected thereby, the administrator replies, that the statute fixed forty cents per hour as a minimum standard to be attained as soon as possible without curtailing employment and provided that industry committees should consider and report, and the administrator should find, not what would be a rate necessary for the maintenance of a minimum standard of living, for Congress has fixed that standard, but when and to what extent that standard can be reached or approximated without serious curtailment of employment.

Finally, the administrator pointing to the composition and make-up of the industry committee; the voluminous record of evidence taken and considered; the careful hearings had; the sharp differences of opinion in the committee; the thoughtful and detailed report it filed; its careful and thorough consideration and approval by the administrator, as shown by the thoughtful and clear opinion he filed; and finally to the fact that of all the industry affected, only these two roads, and they, in a peculiarly parlous economic condition, have objected to it, insists that as near as is humanly possible, the matter remitted by Congress for consideration, hearing and order, has been carefully, fully and justly, heard and determined.

---

roads; (b) that the administrator failed to consider independently of its relationship to curtailment of employment, the question of whether any wage increase for the railroad carrier industry was economically feasible and could be made, having due regard to economic and competitive conditions in the industry; (c) that the administrator failed to consider the effect of such increased wage rate upon the employers affected thereby, and their payrolls individually and of each group or class of carriers similarly situated, but considered its effect upon only the total number of employees and the total payroll of the carriers in each division as a whole; (d) the classification in the industry did not consider the factors required by the statutes to be considered,

but was arbitrarily based on a classification valid only for accounting and statistical purposes; (e) there was no finding that the wage rates fixed were necessary for the maintenance of the minimum standard of living of employees affected by it and as interpreted and applied, it was for the purpose of raising wages rather than establishing a minimum wage; (f) as applied to the complainants, the finding of the administrator, that the wage increases would not substantially curtail employment on their properties and the finding that petitioners, for the purpose of fixing wages properly, come within classification of the trunk line division, was unsupported by, indeed contrary to the weight of the evidence.

We agree with the administrator. It is not our province to determine for ourselves whether the definition and classification used by the administrator, were the best possible. Our duty is done when we determine as we must here, that they were legally permissible, having regard to the factors to be considered and the results to be attained.

As to the definition of the industry and the classification within it, it is a truism to say that the railroad carrier industry, is, and has long been, recognized to be, a separate and complete industry, having legal and factual attributes and conditions sharply differentiating it from other forms of industry and of transportation, and that the classification within the industry, into trunk and short line carriers, is almost, if not quite, as well recognized and established as the industry itself. It might be that a classification on the basis of net rather than gross earnings or a classification which took into account, more than this one did, the economic and financial difficulties and trials of particular railroads, and groups of railroads, would work out better than the one adopted. Of this no one can be sure. But it is certainly true that whether some other classification would be subject to fewer objections, raise fewer difficulties than the one employed, is not material to the inquiry here. That inquiry is whether upon the evidence, we can say that, as to complainants, the one employed had no reasonable relation to the objectives of the classification and therefore resulted in subjecting them to an unlawful burden. We think it plain that we cannot.

When it comes to the main grounds of the complaint, that the economic situation of the industry and the economic feasibility of the increase, should have had a more independent consideration than was given them and that instead of a determination whether the wage increase would substantially curtail employment, the basis of the order should have been a determination of the ability of the industry to economically bear the increase, we cannot at all agree. Consideration of these and other factors was indeed enjoined upon the industry committee and the administrator and consideration was given them, but the prime consideration of committee and administrator, the ultimate determination, to be made by them in fixing any rate up to the desired statutory minimum of forty cents per hour, was its effect upon curtailment of employment in the industry. Any other view would, in disregard of the fact that Congress had already by statute fixed minimum wage standards, refer to the deliberation and decision of industry committees, and the administrator, matters Congress had already settled. In the Opp case the Supreme Court makes this quite clear. "Committee and Administrator are required, as prerequisites for the classification, to determine that it will not give a competitive advantage to any group in the industry, and that the prescribed wage will not substantially curtail employment in each classification." 312 U.S. page 143, 61 S.Ct. page 532, 85 L.Ed. 624. "The basic facts to be ascertained administratively are whether the prescribed wage as applied to an industry will substantially curtail employment, and whether to attain the legislative end there is need for wage differentials applicable to classes in industry." 312 U.S. page 145, 61 S.Ct. page 535, 85 L.Ed. 624.

Of the complaints that the ordered raise in wages will give a competitive advantage to some in the railroad carrier industry, it is sufficient to say there is no proof whatever that this is so. Particularly is there no proof that complainants will be placed at a competitive disadvantage as to short line carriers. Of the complaint that the wages fixed for the railroad carrier industry will give others in the transportation industry, a competitive advantage over rail carriers in general, and complainants in particular, it is sufficient to say; that the wage order complained of did not freeze wage rates of other transportation agencies; that the statutory scheme contemplates canvassing those so engaged and fixing wages for them just as was done in the case of rail carriers; that it is too early to indulge in prophecy as to whether there will be discrimination until the results of the canvassing and determination as to others engaged in transportation has been concluded and the results made known; and that it will be time enough to complain of and seek relief against the rate order as giving competitive advantages to others when it is clear in the light of the wages fixed for them that it does so. Of the general complaints against the wage order as it affects the carrier industry in general, it is sufficient to say that a careful consideration of the whole proceedings, including the evidence taken before both committee and administrator, and the findings made by

both in the light of the fact that of all the industry affected, only these two railroads having a peculiar economic status, complain, convinces us that the administrator's finding that the wage rate fixed will not substantially curtail employment in the industry, is well sustained, and that the complaint of the finding and the order is without merit.

■ ■ Complainant's real case, if they could have one in law, lies in the fact that already operating at a loss, the additional expenditure required by the wage orders will increase that loss, but this, in view of the paramount policy of the law, is a matter, of individual and not of general concern and may not be alleviated by writing exceptions into the law. The question for consideration here is not whether any particular member of an industry can absorb and survive the establishment of a wage within the minimum fixed by Congress but whether the industry as a whole, can absorb and survive it without serious resultant curtailment of employment. If, in short, complainants, viewed as individual members of an industry, are so situated, economically in it, as to be unable to pay the rate fixed as a minimum for that industry, this does not furnish any ground for refusing to institute the rate, unless their position in the industry is so dominating or so important, that their failure to survive would seriously injure the industry and those employed in it by throwing a considerable part of them out of employment. If then, we could find, as complainants insist we should, that the finding that the wage rate will not result in the curtailment of employment on complainants' lines, is unsupported by the evidence, and we find no ground for doing so, this would not avail complainants. For, taking an over all view, we could then find only that for reasons having no substantial relation to the fixing of the minimum rate in question, except that it adds a little more to their already overheavy burden, complainants will continue to find themselves in the position of devoting their properties to the public service without securing an adequate return upon them. But this is no legal or constitutional impeachment of the statute or of the order made under it. It is merely, another instance of what occurs in particular situations under any law designed to promote the general good, another proof of the profound conviction that finite justice which has its seat in the enlightened conscience of mankind, always has been and always will be the nearest attained and the best administered, when the actual law has struck the best balance the times admit of, between sympathy for individual hardship and a strong and enlightened common sense. A common sense which examines and disposes of the particular claim of an individual demandant in the light, not merely of its own appeal, but of those social considerations, out of which wisdom and prudence and a strong common sense, from time to time extract principles for the guidance of human affairs.

■ ■ Counsel for complainants, in their brief, well say: "The Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.] is social legislation. The policy of the act as set forth by Congress is to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well being of workers through the establishment of minimum wages as therein set forth." Such a policy and such a purpose has been held to be well within constitutional limitations. If, as complainants vigorously argue, the operation of the law falls more heavily on them because of their peculiar economic status in the industry, than it does on others better placed in it, this is no reason for not requiring them to conform to the standard set. For the aim and purpose of the law, as pointed out in the act and in the decisions under it, is to fix wages not for particular individuals and companies but industry wide, on a basis which the industry can stand and under conditions which if classification is required in the industry, will not give one section of it a competitive advantage over another. Whether the law has operated and will operate fairly, whether its policy is good or bad, whether the view that Congress has taken of industries as a whole, rather than of their individual members, is the best view to take, is not for us to say. It is for us to say only whether appellants are properly members of the industry whose wages are fixed in the order, whether they fall within the classification to which they are assigned, and whether, as members of that class, they have or have not been discriminated against in favor of members of other classifications. We think it clear that the order in question was entered with a due regard for, and conformity with, all of these considera-

tions. We find no reason to modify or reverse it, in whole or in part. The petition for review is denied. The order is affirmed.