**WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. KERR.**

No. 2432.

District Court, E. D. Pennsylvania.

Dec. 2, 1942.

Ernest N. Votaw and Bernard L. Barkan, both of Philadelphia, Pa. (Warner W. Gardner, Roy C. Frank, and Mortimer B. Wolf, all of Washington, D. C., on the brief), for plaintiff.

H. M. McCaughey, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action brought by the Administrator of the Wage and Hour Division to enjoin defendant from violating Section 15(a) (1), (a)(2) and (a)(5) of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. I make the following special

### Findings of Fact:

1. Plaintiff is the duly qualified Administrator of the Wage and Hour Division, United States Department of Labor.

2. Defendant is a resident of Pennsylvania and is now, and has been since prior to October 24, 1938, the sole owner and operator of a dye house located in Philadelphia, Pennsylvania, where he is engaged, under the name of Oxford Dye Works, in the dyeing of carpet and rug yarns.

3. From some time prior to October 24, 1938 until the present time the defendant has employed approximately twenty employees in his business.

4. Defendant's business consists in the dyeing of yarns owned by his customers.

5. The yarns which are dyed by defendant are delivered to him by his customers, who are carpet and rug manufacturers, and, after they have been dyed, are returned by the defendant to these customers.

6. All defendant's customers are engaged in business in Pennsylvania and the manufacture of the carpets and rugs in which the yarns dyed by the defendant are used is conducted in Pennsylvania.

7. When the carpets and rugs have been manufactured by defendant's customers

they are sold and shipped to various points outside of Pennsylvania, to the defendant's knowledge.

8. All of defendant's employees perform some of the operations necessary to the dyeing of the yarn and its delivery to defendant's customers.

9. The control of the defendant over the yarn after it has been dyed ceases when he delivers it to the manufacturers of carpets and rugs.

### Discussion.

The relevant portions of Section 15 of the Fair Labor Standards Act of 1938 which the Administrator seeks to enforce against this defendant make it unlawful "(1) to transport, offer for transportation, ship, deliver, or sell in commerce, or to ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any employee was employed in violation of section 6 or section 7 [section 206 or section 207 of this title], or in violation of any regulation or order of the Administrator issued under section 14 [section 214 of this title] * * *;

"(2) to violate any of the provisions of section 6 or section 7 [section 206 or section 207 of this title], * * *

"(5) to violate any of the provisions of section 11(c) [section 211(c) of this title] * * *." 29 U.S.C.A. § 215(a) (1, 2, 5).

Section 6 of the Act provides a minimum rate of pay for employees engaged "in the production of goods for commerce". Section 7 prohibits an employer from employing any employee engaged "in the production of goods for commerce" longer than a specified number of hours per week unless the employer pays the employee for such excess hours of work at a rate of pay not less than one and one-half times his regular rate of pay. Section 11(c) of the Act provides for the keeping of prescribed records.

There is no substantial dispute as to the facts. The defenses raised are that defendant's employees are not engaged "in the production of goods for commerce" within the meaning of the Act; that defendant is a service establishment and hence, under Section 13 of the Act, is expressly exempted from the provisions of Sections 6 and 7 thereof, and that plaintiff may not obtain injunctive relief because of his failure to advise the defendant, upon request, of defendant's status under the Act.

Are defendant's employees engaged "in the production of goods for commerce" within the meaning of the Act? Defendant argues that the dyeing business conducted by him is separate and distinct from the manufacture of rugs; that when he receives yarn from customers in Pennsylvania, dyes it and returns it to them, his function is completed; and that the subsequent use of such yarn by his customers in the manufacture of rugs and carpets shipped interstate cannot render his completed activity "production of goods for commerce".

This contention cannot be sustained upon a consideration of the language and purpose of the Fair Labor Standards Act of 1938. The definition of the word "goods" as used in the Act is set forth in Section 3(i) thereof and includes "articles or subjects of commerce, or any part or ingredient thereof." The word "produced" is defined in Section 3(j) of the Act to include "manufactured, mined, handled, or in any other manner worked on." From these definitions it appears that the applicability of the Act is in no way limited to a situation in which one who produces goods is himself responsible for their subsequent movement in commerce. By its terms as thus defined the Act applies equally where the work is performed on any part or ingredient of an article of commerce. The rugs and carpets manufactured by defendant's customers in the case at bar and shipped interstate are certainly articles of commerce. It is the purpose of the Act that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430. Congress, by virtue of its power to legislate as to activities which directly affect interstate commerce, has admittedly sought in this Act to regulate the conditions under which the production of goods which move in that commerce takes place—such production being almost invariably a local or intrastate activity. Whether a particular manufacturer who is engaged in producing goods, within the meaning of the Act, which thereafter move in commerce, is responsible for such movement, or whether his activities with respect to the goods is completely terminated by the delivery of his goods to another in the same state who thereafter

ships them in interstate commerce in either their original or a changed form, has no material bearing on the applicability of the Act. The fact of interstate shipment is merely the basis of the power of Congress to enact regulatory legislation, but the subject of that regulation is the production of the goods which are shipped. Compare National Labor Relations Board v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014, in which the Supreme Court, in determining that the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., was applicable to a New Jersey manufacturer who performed work on goods of a New York firm which were subsequently shipped in interstate commerce, held it to be immaterial whether the respondent received the goods from and delivered them to the New York firm directly or to its representative in New Jersey.

· Among the decisions which have reached similar conclusions with respect to the scope of the Fair Labor Standards Act of 1938 in analogous situations there may be cited Sunshine Mining Co. v. Carver, D. C., 41 F.Supp. 60 (mining of ore sold to local refiners who shipped refined metal interstate); Divine v. Levy, D. C., 39 F.Supp. 44 (production of crude oil sold to local refiners which sold refined oil in interstate commerce); Allen v. Moe, D. C., 39 F. Supp. 5 (lumber sold to a local manufacturer of matches shipped interstate); Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897, certiorari denied 316 U.S. 704, 62 S.Ct. 1312, 86 L.Ed. 1772 (cigar boxes sold to local cigar manufacturers who shipped in interstate commerce).

■■ The second contention of the defendant is that he conducts a service establishment within Section 13(a) (2) which provides: "The provisions of sections 6 and 7 [sections 206 and 207 of this title] shall not apply with respect to * * * any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce * * *."

The very fact that the exemption is to employees of any "retail or service" establishment suggests strongly that what was contemplated by "service" establishment was the type of business which sells services to the general public corresponding to the type of business which sells goods at retail to the general public, e. g., barber shops, parking lots, shoe repair shops, tailor shops. Without attempting however to define what does come within this exemption, it suffices to say that a firm engaged in the dyeing of yarn for use by carpet manufacturers does not come within it.[1]

■ Defendant's final contention is that an injunction should not issue because he wrote several letters to the Wage and Hour Division of the Department of Labor in an attempt to determine his status and received no answer except a poster that the carpet and rug industry was exempted from the Act. This was apparently true with respect to the Textile Wage Order in effect at the time the inquiries were made by the defendant. Subsequently however there was promulgated, after due publication and notice as required by the Act, the Carpet and Rug Wage Order which became effective February 28, 1941, since which time the defendant has admittedly not been in compliance. Under these circumstances, an injunction to compel future compliance is entirely proper. I make the following

### Conclusions of Law:

1 Defendant's employees are engaged in the "production" of goods for commerce "within the meaning of the Fair Labor Standards Act of 1938".

2. An establishment engaged in the dyeing of yarns for use of manufacturers of carpets and rugs is not a "service establishment" the employees of which are exempted by Section 13(a) (2) of the Fair Labor Standards Act of 1938 from the provisions of Sections 6 and 7 of that Act.

3. Defendant has committed and is committing violations of Section 15(a) (1) (2) and (5) of the Fair Labor Standards Act of 1938, and plaintiff is entitled to an injunction restraining defendant from future violations thereof.

Counsel may submit a decree.

[1] For a detailed discussion of the scope of the exemption of service establishments reference may be had to Interpretative Bulletin No. 6, issued by the Administrator. In United States v. American Trucking Associations, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345, 1354, the Supreme Court said that the interpretations of the Act by the Wage and Hour Division are "entitled to great weight".