WALLING, Administrator of Wage and Hour Division, United States Department of Labor, v. HIGGINS.

No. 2433.

District Court, E. D. Pennsylvania.

Dec. 3, 1942.

Ernest N. Votaw and Bernard L. Barkan, both of Philadelphia, Pa. (Warner W. Gardner and Roy C. Frank, both of Washington, D. C., on the brief), for plaintiff.

Cornelius C. O'Brien, of Philadelphia, Pa., for defendant.

BARD, District Judge.

This is an action brought by the administrator of the Wage and Hour Division to enjoin defendant from violating Section 15 (a) (1), (2) and (5) of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. I make the following special

### Findings of Fact:

1. Plaintiff is the duly qualified Administrator of the Wage and Hour Division, United States Department of Labor.

2. Defendant is a resident of Pennsylvania and is now and has been since prior to October 24, 1939, the sole owner and operator of a manufacturing plant located in Philadelphia, Pennsylvania, where he is engaged, under the name of Artex Sample Book Company, in the production and sale of sample books.

3. From some time prior to October 24, 1939, until the present time the defendant has employed approximately ten employees in his business.

4. The operations of these employees consist of cutting fabrics, leathers, textiles and other materials into swatches, labeling them, pasting or otherwise attaching them to pasteboards or folders, assembling them and putting them into rotation.

5. All of defendant's employees have some part in the operations which result in the finished sample book which uses paper or paper products as a component.

6. The customers of the defendants for whom these sample books are manufactured are all located in Pennsylvania and in almost every case the defendant delivers the sample books directly to his customers who in turn thereafter distribute them to their prospective customers.

7. Sample books produced by defendant using paper as a component are distributed by his customers to points outside of Pennsylvania.

8. The sample books are shipped, delivered and transported in interstate commerce at no cost to the ultimate recipients thereof.

9. On May 29, 1941, the Administrator of the Wage and Hour Division duly promulgated a wage order for the converted paper products industry establishing a minimum wage rate of thirty-eight cents an hour, effective as of June 30, 1941.

10. During the period beginning June 30, 1941 until after the present action was instituted defendant paid a number of his employees wages at rates less than thirty-eight cents per hour for their employment in the production, inter alia, of sample books of which paper is a component.

11. The defendant at the time of the hearing in this case was in compliance with the provisions of the Fair Labor Standards Act of 1938 and the wage rates prescribed by the wage order for the converted paper products industry.

### Discussion.

In defendant's answer to the complaint filed in this case he admitted that he paid employes engaged in the production of sample books less than the hourly rate prescribed by the wage order of May 29, 1941, establishing minimum wage rates in the converted paper products industry effective June 30, 1941. He denied any violation of the Fair Labor Standards Act of 1938, however, on the grounds that (1) the wage order for the converted paper products industry did not apply to the work done by his employees; (2) the sample books produced by his employees were sold by him to customers in Pennsylvania only and not in interstate commerce; and (3) the books were then distributed by these customers free of cost and were at no time sold or offered for sale in interstate commerce.

At the trial it was stated by counsel for the defendant and for the Administrator that there was no real dispute as to the facts but that the issues for determination were the above three questions of law raised by the defendant. Accordingly, little testimony was offered by the Administrator and the substance of what other witnesses would testify to was stipulated. There are enough facts on the record, however, to present the issues raised by the defendant's answer.

On the question whether the wage order for the converted paper products industry is applicable to the sample books produced by the defendant, there is little doubt. The sample books in question are manufactured by defendant out of paper or cardboard to which there are affixed by defendant's employees samples of the materials or fabrics sold by defendant's customers. The wage order, after enumerating a number of paper products within its scope, includes a classification of "products not elsewhere classified". It is therefore clear that the scope of the order includes the production

of sample books using paper or cardboard as a component.

The second question is whether the operations of the defendant's employees with respect to these books constitute "production of goods for commerce" as this term is used in the Fair Labor Standards Act of 1938. By Section 3(j) of the Act the word "produced" is defined to include "manufactured, mined, handled, *or in any other manner worked on*". By Section 3(i) the word "goods" is defined to include "articles or subjects of commerce of any character, *or any part or ingredient thereof.*" In defendant's testimony he stated that the employees in question performed some function with respect to the preparation of the books, either by way of pasting the samples on the leaves, making the coverings, or assembling the books and putting them in rotation. Under the definitions of the Act these employees are plainly engaged in the "production of goods for commerce", provided of course that these sample books are "articles or subjects of commerce" and their production is "for commerce".

On the question of interstate commerce defendant took the position that inasmuch as all of the books produced by his employees were sold and delivered to customers in Pennsylvania, his function with respect to the books was completed and terminated at that time, and that any subsequent movement of the books in interstate commerce could not make the completed activities of his employees "production for commerce". That at least some of these sample books did move in interstate commerce was shown by evidence as to their disposition by some of the defendant's customers which indicated that many of the books were sent to recipients outside of Pennsylvania.

Defendant's contention that plaintiff cannot prevail because he has failed to show that the particular employees who received wages at a rate below the prescribed minimum, and who were present in court prepared to testify if necessary, worked on the particular sample books of these customers which ultimately moved in interstate commerce, cannot be sustained. The burden of tracing back the process of production of each article subsequently moving in commerce to determine whether particular employees who were generally engaged in the production of such articles actually worked on the ones ultimately moving in interstate commerce would make enforcement of the Act virtually impossible. In the absence of the defense that there was a complete segregation of the activities of the employees in question, it is reasonable to believe, and I so find, that the employees in question performed work on sample books which did subsequently move in interstate commerce.

There is therefore presented the question whether the production by the defendant's employees of sample books which ultimately moved in interstate commerce is insulated from the field of operation of the Fair Labor Standards Act of 1938 by the cessation of defendant's connection with the books by their delivery to his customers within Pennsylvania. In this Act Congress has admittedly regulated intrastate operations of production by virtue of its power over interstate commerce in the movement of the finished product. If the goods produced by the defendant move in interstate commerce, the Act regulates the conditions of production, and it is immaterial that some other person is responsible for their interstate movement. A more complete discussion of this question may be found in the opinion this day rendered in Walling, Administrator, v. Kerr, individually and doing business as Oxford Dye Works, D.C., 47 F.Supp. 852.

The third question raised is whether the admitted fact that the sample books are distributed free of charge to the ultimate recipients by defendant's customers prevents them from being "articles of commerce" within the meaning of the Act. There is nothing in the Act which appears to make such a limitation. The purpose of the Act has been declared by the Supreme Court of the United States to be, inter alia, "to exclude from interstate commerce goods produced for the commerce and to prevent their production for interstate commerce, under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being." United States v. Darby, 312 U.S. 100, at page 109, 657, 61 S.Ct. 451, at page 455, 85 L.Ed. 609, at page 614, 132 A.L.R. 1430. In view of this purpose there seems little reason to restrict the meaning of the term "articles of commerce" to "articles which move in commerce as a result of a sale thereof". It may be further pointed out that the movement of these sample books in interstate commerce is not a chance or occasional occurrence, but constitutes part of the regu-

lar course of business of defendant's customers as a means or method of furthering and effectuating interstate sales and shipments of the fabrics and other materials displayed therein. In this respect also the books may be deemed "articles of commerce", although no separate charge is made for them when they are distributed by defendant's customers. Compare Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897, certiorari denied Enterprise Box Co. v. Holland, 316 U.S. 704, 62 S.Ct. 1312, 86 L.Ed. 1199, in which it was held that the provisions of the Fair Labor Standards Act of 1938 were applicable to the defendant's manufacture of cigar boxes sold to a cigar manufacturer who used them as a container for interstate shipment of his product.

 Accordingly, the evidence is sufficient to establish that defendant has violated Section 15(a) (2) of the Act, which makes it unlawful to violate the provisions of Section 6 of the Act, which establishes the minimum wage rates. The evidence fails to establish violations of Section 15(a) (1) or 15(a) (5) of the Act.

Apart from the defenses urged by the defendant with respect to the applicability of the Act to the operations of his employees, defendant contends that in no event should an injunction issue against him in view of the evidence at the hearing that some weeks prior thereto he voluntarily came into complete compliance with the requirements of the Act. However commendable such voluntary compliance may be, it is not ground for denying the Administrator the right to injunctive relief where, as in this case, it was not commenced until after suit was instituted and where the defendant in his answer and at trial denies that the operations of his employees are subject to the Act.

I make the following

### Conclusions of Law:

1. The wage order promulgated May 29, 1941, for the converted paper products industry is applicable to operations of employees engaged in the manufacture, arranging and assembling of the sample books using paper or cardboard as a component part.

2. The employees of a Pennsylvania manufacturer of sample books are engaged in the "production of goods for commerce" within the meaning of the Fair Labor Standards Act of 1938 although the manufacturer delivers the books to his customers only in Pennsylvania and they subsequently distribute them interstate to prospective customers for the products displayed in the sample books.

3. Such books constitute "articles of commerce" within the meaning of the Fair Labor Standards Act of 1938 although their distribution to recipients in other states is made without charge.

4. Compliance with the provisions of the Fair Labor Standards Act of 1938 after action by the Administrator for injunctive relief has been instituted and is defended on the ground that the Act does not apply to the operations engaged in by defendant's employees is no bar to the granting of an injunction.

5. Defendant has violated Section 15(a) (2) of the Fair Labor Standards Act of 1938 and plaintiff is entitled to an injunction restraining defendant from further violations of this section.

Counsel may submit a form of decree.