WALLING v. COHEN et al.
Civ. A. No. 2402.

District Court, E. D. Pennsylvania.
Feb. 8, 1943.

Ernest N. Votaw, Regional Atty., U. S. Dept. of Labor, and Bernard L. Barkan, Atty., Dept. of Labor, both of Philadelphia, Pa., and Irving J. Levy, Acting Sol., Dept. of Labor, of Washington, D. C., for plaintiff.

Harry Shapiro and Maxwell S. Rosenfeld, both of Philadelphia, Pa., for defendants.

BARD, District Judge.

This is an action by the Administrator of the Wage and Hour Division of the Department of Labor to restrain the defendants from violating Sections 15(a) (1), 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq. I make the following special findings of fact:

1. Defendants are, and for many years have been, engaged in the manufacture of novelties for interstate commerce, in the course of which they manufacture advertising hats and caps.

2. These hats and caps include, skull caps, sailor hats, guard hats, baseball caps and yacht caps, some of which contain visors, and they are made from woven fabrics, leatherette, mixed cotton, woolfelt and fur-felt materials.

3. There is less skill necessary in the manufacture of these hats and caps than of conventional dress hats and caps and they are less expensive.

4. In May of 1940 the plaintiff promulgated a wage order for the Caps and Cloth Hats Division of the Apparel Industry and a wage order for the Hat Industry, both effective July 15, 1940, which wage orders established a minimum wage rate of 40 cents an hour.

5. In June of 1940 defendants were advised that these wage orders might be applicable to their manufacture of hats and caps, and on August 19, 1940 they were formally notified that the Administrator interpreted these orders as being applicable thereto.

6. Since July 15, 1940 defendant has failed to pay all of its employees engaged in the production of hats from the materials enumerated in these wage orders a minimum wage of 40 cents an hour.

### Discussion.

In accordance with the Fair Labor Standards Act of 1938 committees were appointed which recommended certain wage orders subsequently adopted and promulgated by the plaintiff in May 1940 for the Caps and Cloth Hats Division of the Apparel Industry and for the Hat Industry. By reason of these orders the minimum wage of 40 cents per hour, which is established by the Act to become effective not later than 1945, was accelerated and became effective July 15, 1940. The sole issue is whether these accelerated wage orders are applicable to defendants and whether defendants' admitted noncompliance therewith is therefore a violation of the Act.

The procedure to be followed by the Administrator in the formulation and promulgation of wage orders under the Act is set forth in various sections thereof.[1] In general, committees are appointed

---

[1] Section 5(a) provides: "The Administrator shall as soon as practicable appoint an industry committee for each industry engaged in commerce or in the production of goods for commerce."

Section 5(b) provides: "An industry committee * * * shall include a number of disinterested persons representing the public * * * a like number of persons representing employees in the industry, and a like number representing employers in the industry."

Section 8(a) provides: "With a view to carrying out the policy of this Act [sections 201–219 of this title] by reaching, as rapidly as is economically feasible without substantially curtailing employment, the objective of a universal minimum wage of 40 cents an hour in each industry engaged in commerce or in the production of goods for commerce, the Administrator shall from time to time convene the industry committee for each such industry, and the industry committee shall from time to

for each industry engaged in the production of goods for commerce to recommend reasonable classifications within such industries necessary to fix the highest minimum wage, not in excess of 40 cents an hour, which will not substantially curtail employment therein nor give a competitive advantage to any group in the industry. The Administrator may thereupon define the industries and classifications in an order establishing such minimum wages.

The contentions of the defendants in the present case are all based on the fact that they are novelty manufacturers and that therefore the novelty hats which they manufacture cannot be considered within the scope of the wage orders for the Caps and Cloth Hats Division of the Apparel Industry and for the Hat Industry. It is a fact that the hats manufactured by defendants are used for advertising or novelty wear and that, industrially speaking, the defendants regard themselves and are regarded as members of the novelty, rather than of the hat, industry. This is, however, not necessarily conclusive of the question whether, to the extent that they do manufacture hats, they are within the scope of the wage orders in question.

Section 574.4 of the wage order for the Apparel Industry defines the Caps and Cloth Hats Division as follows: "The manufacture of men's and boys' hats or caps (except men's and boys' fur-felt, wool-felt, straw, and silk and opera hats and bodies) from any woven material, any purchased knitted material, leather, leatherette, or any combination of such materials, including but without limitation, uniform caps, aviation caps, and shop and railroad caps; and including the manufacture of cap visors, bands, and brims, and the manufacture of sweat bands from any material other than leather."

Section 557.4 of the wage order for the Hat Industry includes in the definition of the Hat Industry within its scope the following:

"(a) The manufacture, from any material, of headwear for men and boys, except caps and cloth hats;

"(c) The manufacture of felt headwear of fur for men or boys * * *.

"The manufacture of felt headwear of wool for men or boys * * *."

These definitions in terms are certainly broad enough to include the type of headwear manufactured by the defendants. Defendants make various types of hats and caps, some of which contain visors, out of various woven fabrics, leatherette, mixed cotton, wool-felt and fur-felt materials, all of which are within the definitions in the wage orders promulgated by the Administrator. Moreover, the Administrator has interpreted these orders as being applicable to "the manufacture of men's and boys' caps and cloth hats made for advertising purposes, but to be worn", and the Supreme Court has held that interpretative rulings by the Administrator are entitled to great weight. United States v. American Trucking Associations, 310 U.S. 534, at page 549, 60 S.Ct. 1059, 84 L.Ed. 1345, at page 1354; Overnight Motor

---

time recommend the minimum rate or rates of wages to be paid under section 6 [section 206 of this title] by employers engaged in commerce or in the production of goods for commerce in such industry or classification therein."

Section 8(c) provides: "The industry committee for any industry shall recommend such reasonable classifications within any industry as it determines to be necessary for the purpose of fixing for each classification within such industry the highest minimum wage rate (not in excess of 40 cents an hour) which (1) will not substantially curtail employment in such classification and (2) will not give a competitive advantage to any group in the industry, and shall recommend for each classification in the industry the highest minimum wage rate which the committee determines will not substantially curtail employment in such classification. * * * "

Section 8(f) provides: "Orders issued under this section shall define the industries and classifications therein to which they are to apply, and shall contain such terms and conditions as the Administrator finds necessary to carry out the purposes of such orders, to prevent the circumvention or evasion thereof, and to safeguard the minimum wage rates established therein. No such order shall take effect until after due notice is given of the issuance thereof by publication in the Federal Register and by such other means as the Administrator deems reasonably calculated to give to interested persons general notice of such issuance."

Section 8(g) provides: "Due notice of any hearing provided for in this section shall be given by publication in the Federal Register and by such other means as the Administrator deems reasonably calculated to give general notice to interested persons."

862

Transp. Co. v. Missel, 316 U.S. 572, at page 580, 62 S.Ct. 1216, 86 L.Ed. 1682, at page 1689.

■ That a particular product may normally be considered in one industry rather than in another where both are subject to the Act, does not require the Administrator to adopt this classification. Nor does the fact that other products within the Administrator's definition of an industry require a higher degree of skill in their production and sell for substantially higher prices preclude such a classification. Both these points were met by Mr. Justice (now Chief Justice) Stone, in Opp Cotton Mills, Inc., v. Administrator, 312 U.S. 126, at page 149, 657, 61 S.Ct. 524, at page 535, 85 ·L.Ed. 624, at page 648: "The inclusion of a given product in one industry or another, where both are subject to the Act, principally concerns convenience in administering the Act. For the provisions for classification with appropriate wage differentials affords ample opportunity for fixing an appropriate wage with respect to any product whether it is placed in one industry or another."

■ Defendants further contend that the Administrator cannot properly include the hats manufactured by them within these wage orders because he has failed to prove that the industry in which they are normally classified, the novelty industry, had any representation on the industry committees which recommended the wage orders, or that the committees investigated conditions in that industry to consider production costs and competitive conditions, as required by the Act. I am of the opinion, however, that no such burden is imposed on the plaintiff in this action to compel compliance with the wage orders. The procedure for attacking the validity of the promulgation of wage orders and their applicability to particular operations is set forth in Section 10(a) of the Act, 29 U.S.C.A. Sec. 210(a), which provides: "Any person aggrieved by an order of the Administrator issued under section 8 [section 208 of this title] may obtain a review of such order in the circuit court of appeals of the United States for any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Administrator be modified or set aside in whole or in part. A copy of such petition shall forthwith be served upon the Administrator, and thereupon the Administrator shall certify and file in the court a transcript of the record upon which the order complained of was entered. Upon the filing of such transcript such court shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part, so far as it is applicable to the petitioner. The review by the court shall be limited to questions of law, and findings of fact by the Administrator when supported by substantial evidence shall be conclusive. No objection to the order of the Administrator shall be considered by the court unless such objection shall have been urged before the Administrator or unless there were reasonable grounds for failure so to do. * * *"

The wage orders here involved, effective July 15, 1940, were promulgated in May of 1940 and were duly published in the Federal Register. In addition to the notice thus afforded by the language of the orders, defendants were given express notice by an investigator from the Department, that their employees engaged in the manufacture of hats and caps were within the scope of these wage orders. They made no effort, however, to challenge the validity and applicability of the orders in the manner provided in Section 10(a) of the Act. Defendants advance as their reason for failure to make such a challenge the limitation that "No objection to the order of the Administrator shall be considered by the court unless such objections shall have been urged before the Administrator or unless there were reasonable grounds for failure to do so." If it be true, as defendants contend, that the hats manufactured by them were so patently not in the Apparel Industry that there was no reason for the defendants to appear before the Administrator, this would appear to constitute reasonable grounds for their failure to do so and would entitle them to be heard before the court on the validity of the Administrator's attempt to include their operations within those wage orders. A transcript of the record upon which the orders complained of were entered would then have been duly before the Circuit Court of Appeals, which would have jurisdiction to affirm, modify or set them aside so far as they were applicable to de-

fendants. Not having challenged the validity or applicability of the wage orders before the Administrator or the Circuit Court of Appeals, despite notice that those orders included hat manufacturing operations, defendants cannot cast upon the plaintiff in this proceeding for the enforcement of those orders the burden of establishing the scope of the investigation leading to their promulgation.

I therefore make the following conclusions of law:

1. The hats and caps manufactured by the defendants are within the definitions of hats and caps contained in the hat wage order and the wage order for the Caps and Cloth Hats Division of the Apparel Industry effective July 15, 1940.

2. Since July 15, 1940 defendants have violated Sections 15(a) (1) and 15(a) (2) of the Fair Labor Standards Act of 1938 with respect to employees engaged in the production of hats and caps.

3. In an action to compel compliance with a wage order promulgated under the Fair Labor Standards Act of 1938 the Administrator is not required to establish affirmatively the scope of the investigation leading to its promulgation.

4. An injunction may issue.

Counsel may submit a form of decree.