**PEARSON et al. v. WALLING, Adm'r of Wage and Hour Division, U. S. Dept. of Labor.**

**No. 12584.**

Circuit Court of Appeals, Eighth Circuit.

Nov. 10, 1943.

656

Jay W. Dickey, of Pine Bluff, Ark., and A. F. House, of Little Rock, Ark. (Hendrix Rowell, of Pine Bluff, Ark., on the brief), for appellants.

George M. Szabad, Atty., U. S. Dept. of Labor, of Washington, D. C. (Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D.C., Llewllyn B. Duke, Reg. Atty., of Dallas, Tex., and Morton Liftin and Flora G. Chudson, Attys., U. S. Dept. of Labor, both of Washington, D. C., on the brief), for appellee.

Before WOODROUGH, THOMAS, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The Administrator of the Wage and Hour Division brought suit in the district

court, under § 17 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 217, to enjoin appellants from violating the provisions of 29 U.S.C.A. § 215(a) (1) and (2). The violations alleged were based upon appellants' failure to comply with the provisions of a wage order for the Lumber and Timber Products Industry, issued by the Administrator on October 17, 1941, under 29 U.S.C.A. § 208, and effective November 3, 1941, which established a minimum wage of 35 cents per hour for all employees in such industry, covered by the Act.[1]

Appellants, as partners, operate a manufacturing plant in Pine Bluff, Arkansas, which produces, sells and distributes bows, arrows, targets and other miscellaneous items of archery equipment, in interstate commerce. They admit that their business is subject to the Fair Labor Standards Act. They raise no question as to the validity of the Administrator's wage order in relation to the Lumber and Timber Products Industry, but their contention is that they are not reasonably within the definition of the Lumber and Timber Products Industry[2] contained in the Administrator's order and so cannot properly be subjected to its prescription.

The district court held that those of appellants' employees who were engaged in the production and shipping of bows and arrows were under the Administrator's wage order for the Lumber and Timber Products Industry, and that appellants should be enjoined from thereafter paying to such employees wages at rates less than those prescribed by the Administrator's order for the Lumber and Timber Products Industry. There are other provisions in the decree which are consequents of this holding and which do not require mention here.

Appellants' general position can perhaps most easily be stated in the language of their reply brief: "The appellants have never contended that the Administrator could not have included them in a wage order made applicable to the Lumber and Timber Products Industry. They concede now that had they been included in the definition, their remedy would have been limited to an application to the Industry Committee to be excluded or to receive special classification and then judicial review as provided by section 10(a) of the Act.[3] The appellants only contend that they are not within the definition and that the Administrator, by his ex parte interpretation, is trying to deprive them of the right to be notified and the privilege to be heard, both of which were granted by the Congress[4] as a protection against an overenthusiastic exercise of delegated powers."

As appellants properly concede, if an industry has been sufficiently clearly defined by the Administrator, and notice and opportunity for hearing have appropriately been given in accordance with the requirement of the Act, the question whether a particular product should have been included in such industry or in another, or in some special classification thereunder, is primarily a matter of administrative convenience and judgment;[5] and, in any event, where there has been a sufficiently clear definition by the Administrator and notice and opportunity for hearing have been duly given, any question of unreasonableness or arbitrariness in connection with the issuance of a wage order is reachable

---

[1] See 6 F.R. 5309, 29 Code of Fed. Reg., 1941 Supp., §§ 610.1–610.6.

[2] 29 Code of Fed.Reg., 1941 Supp., § 610.4. *Definition of the Lumber and Timber Products Industry:*

"The Lumber and Timber Products Industry to which this part shall apply is hereby defined as follows:

"Wood saw milling and surfacing; wood reworking, including but without limitation kiln or air drying, and the manufacture of planing mill products, dimension stock, boxes, and wood turnings and shapings; and the manufacture of specialized timber products including but without limitation shingles, cooperage stock, veneer, plywood, and veneer packaging: Provided, however, That the term does not include cooperage or the manufacture of cigar boxes, cork products, reed and rattan products except vegetable and fruit baskets, or furniture and furniture parts as defined in Administrative Order No. 108.

"The manufacture of any products covered under this definition shall be deemed to begin with the unloading of the raw material at the mill site."

[3] 29 U.S.C.A. § 210(a).

[4] See 29 U.S.C.A. § 208(f) and (g).

[5] Cf. Opp Cotton Mills v. Administrator of Wage and Hour Division, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624; Art Metal Works v. Walling, 76 U.S.App. D.C. 67, 129 F.2d 50; Southern Garment Mfrs. Ass'n v. Fleming, 74 App. D.C. 228, 122 F.2d 622; Walling v. Cohen, D.C.E.D.Pa., 48 F.Supp. 859.

judicially only by petition for review in the proper circuit court of appeals.[6]

Does the Administrator's definition of the Lumber and Timber Products Industry sufficiently clearly, by express language or reasonable implication, include the manufacturing of bows and arrows? More concretely, is the definition sufficiently specific, so that the notice based thereon, of the hearing before the Industry Committee,[7] and of the hearing before the Administrator on the Industry Committee's recommendations, and of the final promulgation of the wage order, could fairly and reasonably be expected to advise appellants and other manufacturers of bows and arrows[8] that they were in all reasonable certainty within the compass of the proceedings being had and of the final order made?[9]

We think the Administrator's definition, by its inclusion of "the manufacture of specialized timber products", was reasonably sufficient for this purpose; that appellants were thus legally advised by the published notices that, unless an express exclusion was subsequently made, their bow-and-arrow manufacturing operations were properly within the scope of the proceedings had; that they were accordingly afforded a fair legal opportunity to appear in the proceedings and to seek to have their product excluded or specially classified, if they were properly entitled thereto; that they were similarly duly put in a position to require them to have attacked the final wage order on petition for review; if any sound ground existed therefor; and that, in thereafter seeking to enforce the wage order against appellants' bow-and-arrow

manufacturing operations, the Administrator cannot fairly be said to have failed to make an adequate definition under the Act, to have been guilty of arbitrariness or fundamental injustice in administration, or to have violated due process.

Section 8(f) of the Act, 29 U.S. C.A. § 208(f), requires, of course, that "Orders issued under this section shall define the industries and classifications therein to which they are to apply", but this does not mean that Congress intended to compel the Administrator to enumerate in his definition every specific product which the order was designed to cover. Such an attempted enumeration, as the Administrator points out in his brief, would certainly be a most difficult if not an impossible task. The power delegated to the Administrator to make definitions and classifications and to fix wage rates on the basis thereof manifestly was intended to assist in furthering the broad remedial purposes of the Act, and, in that light, we see no reason to suppose that Congress intended to require stricter or narrower standards of definition and classification on the part of the Administrator than it could itself have employed. Where the Administrator has acted within the general sphere of his delegated powers and has complied with the processes necessary for their exercise, his wage orders, for all civil purposes at least, have the force and effect of a legislative act,[10] are subject to the same tests as to their validity,[11] and are governed by the same rules of interpretation and construction.[12] On the basis of these principles, we believe that the Administrator, in formulating a definition for wage-order

---

[6] See · 29 U.S.C.A. § 210. Cf. also Utah Fuel Co. v. National Bituminous Coal Commission, 69 App.D.C. 333, 101 F.2d 426, affirmed on other grounds 306 U.S. 56, 59 S.Ct. 409, 83 L.Ed. 483; Illinois Cent. R. Co. v. State Public Utilities Comm., 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425.

[7] In this case a public hearing on appropriate notice was held before the Industry Committee, although this was not required by the Act. See Opp Cotton Mills v. Administrator of Wage and Hour Division, 312 U.S. 126, 152, 153, 657, 61 S.Ct. 524, 85 L.Ed. 624.

[8] The record shows that there are ten bow-and-arrow manufacturing plants in the United States.

[9] In addition to notice in the Federal Register of the hearing before the Administrator on the recommendations of

the Industry Committee, the record shows that a press release was made embodying the substance of the notice and that this was widely circulated among trade associations, trade unions, trade publications, press associations and newspapers.

[10] Cf. Standard Oil Co. of California v. Johnson, 316 U.S. 481, 484, 62 S.Ct. 1168, 1170, 86 L.Ed. 1611; Columbia Broadcasting System v. United States, 316 U.S. 407, 418, 62 S.Ct. 1194, 1201, 86 L.Ed. 1563; Atchison, T. & S. F. R. Co. v. Scarlett, 300 U.S. 471, 474, 57 S.Ct. 541, 81 L.Ed. 748.

[11] Cf. Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 388, 52 S.Ct. 183, 76 L.Ed. 348.

[12] See 42 Am.Jur., Public Administrative Law, § 101.

purposes, is only required to outline with reasonable clarity and certainty the general limits or extent of the industry sought to be covered, and that, where this has been done and general opportunity for hearing, on notice, has been duly afforded, there is no legal injustice involved in administratively applying the order to any product which, by sound implication and natural interpretation, falls within the boundaries that have been set, and which has not been specifically excepted therefrom.[13] Here, as in the general testing of any legislative remedial act, it is reasonable and practicable certainty, and not legalistic preciseness, that is the sound criterion in definition.

As we have previously indicated, the manufacture of bows and arrows, as the process is described in the record here, seems to us, reasonably and by sound implication, to fall within the limits or boundaries of "the manufacture of specialized timber products". The record shows that, in the manufacture of bows, appellants first saw and shape rough pieces of wood, until they have been reduced to the proper size, and then sand them by means of a pneumatic drum until they are ready for finishing. They are thereupon sent to the finishing department, where they are dipped in a vat of sanding sealer, are sprayed with varnish, and are duly strung. A leather grip or handle is also placed and glued upon each bow. In the manufacture of arrows, shaped wooden-shafts about 30 inches in length are purchased, and one end thereof is trimmed down to receive a plastic arrow-point, while the other end is shaped to hold a plastic nock for the drawn bow-string. The shafts are then sent to the finishing department, where they are lacquered and color-striped; the plastic point and nock are affixed with glue; and the tail of the arrow is fletched with turkey-feathers.

Wood is thus clearly the basic part or principal component of the structure of both the bows and arrows, and remains so in the finished product, notwithstanding that the cost of the finishing operations, with the materials used included, exceeds the cost of the wood. It is so essentially the predominant part of the manufactured bows and arrows that it seems to us only a fair and natural interpretation and construction to say that they reasonably fall within the category of specialized timber products, in the Administrator's manifest attempt to reach the lumber and timber products industry generally. Since appellants' operations involve the sawing, shaping and finishing of the bows from rough pieces of wood, and the trimming and shaping of the ends of the arrow shafts as well as their finishing, they are not mere assemblers of fitted or standardized parts, but are literally engaged in "the manufacture" of bows and arrows, as specialized timber products.

The fact that appellants also manufacture 34 other items of archery equipment in which no wood is used, and are classified in the trade and for workmen's compensation insurance risk-purposes as sporting goods' manufacturers, does not remove their bow-and-arrow manufacturing operations from the classification of specialized timber products for wage-order purposes under the Fair Labor Standards Act. We are not here concerned with appellants' operations in the manufacture of these 34 other items of archery equipment, at least insofar as they are being carried on by separate employees, nor is their general trade designation or their insurance-hazard classification controlling for wage-order purposes.

Appellants argue that the specifications made in the Administrator's definition under specialized timber products are not descriptive or indicative of bow-and-arrow manufacturing, and that therefore they should not be regarded as being included in the industry. The definition uses the language, "the manufacture of specialized timber products including but without limitation shingles, cooperage stock, veneer, plywood, and veneer packaging". The specifications appear to be simply an enumeration of some of the principal products falling within the general category. It is expressly declared that the specifications are merely "including but without limitation". As we have previously pointed out, the Administrator was not required, nor could he be expected, to make an enumeration of the many minor products that might be involved in the industry, and such products, in which wood was the basic and principal component used in the manufacturing processes, and which were not made the subject of a specific excep-

---

[13] Cf. Art Metal Works v. Walling, 76 U.S.App.D.C. 67, 129 F.2d 50; Walling v. Cohen, D.C.E.D.Pa., 48 F.Supp. 859.

tion, were sufficiently included in the general term "specialized timber products".

It is further argued that the data and material furnished the Industry Committee by the Administrator and the statements made in the findings and opinion of the Administrator in connection with the Committee's recommendation do not demonstrate appellants' inclusion in the category of "the manufacture of specialized timber products". It is impossible and unnecessary to refer to all this material and these statements here. The Administrator's findings and opinion declare that the definition "in general covers all the operations, other than logging, which are necessary to the production of lumber and timber products, beginning with the unloading of the raw material at the mill or plant and ending with the completion and shipment of the products." The report of the Statistics Branch of U. S. Dept. of Labor, Wage and Hour Division, which was before the Industry Committee, lists such varied products as blackboards, blackboard erasers, wood matches, dry and polishing mops, shoe lasts, etc., as being within the industry, and "products which, although made from wood, are unrelated in their manufacturing processes to those which are covered, such as rattan and willowware, or employ wood only as a component of minor importance (cigar boxes and other specialties made from paper, metal, wood and other materials in combination), or involve principally assembling operations (cooperage, window and door screens, weather strips, window shades, Venetian blinds, mirror and picture frames), or are of a peculiar and special nature (cork products, caskets, coffins and other morticians' goods, and wood preserving)" as not being within the industry. But all of this is, of course, merely an interpretative aid to the construction of the language of the definition itself, and in none of it do we find anything to indicate an intention to exclude any general product, in which wood is the principal component and working of the wood itself is part of the manufacturing process, from the coverage of the lumber and timber products industry, unless it is specifically excepted.

The contention that the Administrator's application of the wage order to appellants has deprived them "of the right to be notified and the privilege to be heard" has already been briefly mentioned. If, as we have held above, appellants' operations were fairly and reasonably within "the manufacture of specialized timber products", then they have legally been given due notice and opportunity for hearing. Due process in a proceeding of this character does not require that all those who may be affected by a contemplated wage order shall have had personal knowledge of the pendency of the proceeding or of the promulgation of the order. The statute does not so require, and such a condition would be utterly impossible in practice. The constitutional guaranty of due process demands only that such provision for notice and opportunity for hearing be made as is fair and reasonable in the situations that may be involved, "due regard being had to the nature of the proceeding and the character of the rights which may be affected by it."[14] Notice of hearing "by publication in the Federal Register and by such other means as the Administrator deems reasonably calculated to give general notice to interested persons"[15] sufficiently satisfies the general requirement of due process in a proceeding for the promulgation of a remedial wage order by the Administrator, under an industry definition which can soundly be said to indicate to the producers of particular goods that their product is in all reasonable certainty covered by the definition and within the scope of the proceedings being had. The mere fact that an individual producer does not actually learn of the hearing or of the promulgation of the order at the time is not controlling.

The judgment of the district court is affirmed.[16]

---

14 Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 302, 74 L.Ed. 904, 68 A.L.R. 434.

15 29 U.S.C.A. § 208(g).

16 It should perhaps be added, for informational purposes, that appellants were paying wages equal to or in excess of the wage-order rate to the employees engaged in the cutting, sawing or sanding of wood, and also to some of the employees in their finishing and shipping department. The controversy here relates to those employees in the finishing and shipping department who were not paid the full 35 cents per hour.