WALLING, Administrator, Wage and Hour Division, United States Department of Labor, v. COHEN et al.

No. 8392.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 18, 1943.

Decided Jan. 24, 1944.

454

A. L. Shapiro, of Philadelphia, Pa., for appellants.

David S. Polier, of Washington, D. C. (Douglas B. Maggs, Sol., Bessie Margolin, Asst. Sol., Ernest N. Votaw, Regional Atty., and Morton Liftin, and Flora G. Chudson, Attys., United States Department of Labor, all of Washington, D. C., on the brief), for appellees.

Before BIGGS, MARIS, and JONES, Circuit Judges.

JONES, Circuit Judge.

This is an appeal by the defendants from a decree of the District Court restraining them from violating Secs. 15 (a) (1) and 15 (a) (2) of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 215(a) (1) and (2), and orders of the Administrator promulgated pursuant to the Act.

Conformably with the recommendations of a committee for the apparel industry, duly appointed as authorized by the Act, the Administrator of the Wage and Hour Division of the Department of Labor, on May 17, 1940, promulgated an order approving and defining a classification within the industry to be known as the Caps and Cloth Hats Division and fixing a minimum wage rate of 40¢ per hour for workers within the division, effective July 15, 1940. The Administrator also promulgated a similar wage order applicable to the Hat industry to become effective on July 1, 1940.

The defendants do not question the administrator's action in the premises or his statutory authority so to prescribe. It is their contention that the character of their manufacture does not place them within either the Caps and Cloth Hats Division of the apparel industry or the Hat industry and that, therefore, they are not amenable to the orders above referred to. The Administrator determined, however, that the wage orders were applicable to the defendants and so informed them prior to the effective dates of the orders. The defendants refused to comply, and the Administrator brought the instant suit.

The trial court found that the defendants are, and for many years have been engaged in the manufacture of novelties which go into interstate commerce and that

among their manufactured articles are advertising hats and caps which consist of skull caps, sailor caps, guard hats, baseball caps and yachting caps (some of which have visors) and are made from woven fabrics, leatherette, mixed cotton, wool-felt and fur-felt. The trial court also found that less skill was necessary for the manufacture of such caps and hats than is required for the manufacture of the more conventional type of men's and boys' headwear, and also that they are less expensive to manufacture. It appears from the evidence that the hats and caps manufactured by the defendants usually have advertising matter stamped thereon as desired by the defendants' customers who distribute the hats and caps for their own business purposes. These hats and caps are intended to be worn on the head and are so worn by their users, ordinarily children at play or masquerade or adults at golf or fishing. The manufacturing process by which defendants make their caps and hats is a cutting and sewing operation involving the same process as is used in the manufacture of hats and caps for ordinary wear.

The trial court found the hats and caps manufactured by the defendants to be well within the definitions of both industry classifications and, consequently, held that the wage orders were applicable to the defendants. The court thereupon entered the decree now appealed from, enjoining the defendants from violating the Act and the wage orders. We think that the findings and the evidence fully justify the action taken by the court below.

■ In passing upon the intent and scope of the orders, it is to be borne in mind that the interpretive rulings of the Administrator are entitled to great weight. Cf. United States v. American Trucking Associations, Inc., 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345; Overnight Motor Transportation Co., Inc., v. Missel, 316 U.S. 572, 580, footnote 17, 62 S.Ct. 1216, 1221, 86 L.Ed. 1682. The observance of this rule is especially indicated in view of the fact that, concededly, the Administrator may prescribe an order with special reference to a particular manufacture regardless of the number of persons or companies engaged in it. Practically, therefore, the Administrator's interpretation of his orders is to be viewed from the standpoint of administrative convenience. Opp Cotton Mills, Inc. v. Administrator, 312 U.S. 126, 149, 150, 657, 61 S.Ct. 524, 85 L.Ed. 624.

■ The Administrator defined the apparel industry as "The manufacture of all apparel, apparel furnishings and accessories, *made by the cutting, sewing,* or embroidery *processes,* except: knitted outerwear, knitted underwear, hosiery, men's fur-felt, wool-felt, straw and silk hats, and bodies, ladies' and children's millinery, furs, boots and shoes; * * *." (Emphasis supplied.)

This classification is sufficiently specific to identify the character of the manufactures intended to be embraced thereby and, save for the products expressly excepted therefrom, it covered apparel in general. The fact that it was thought necessary to except from the industry certain kinds of hats implies a belief on the part of the administrator that, before delimiting the definition, he had thereby included all types of hats. It can hardly be suggested that hats and caps are not apparel. To hold that it was necessary for the administrator to identify specifically each article embraced by the word apparel would be an unreasonable as well as an unwarranted imposition.

■ In the subclassification of the apparel industry, the Caps and Cloth Hats Division was defined as embracing,—"The manufacture of men's and boys' hats or caps (except men's and boys' fur-felt, wool-felt, straw, and silk and opera hats and bodies) from any woven material, any purchased knitted material, leather, leatherette, or any combination of such materials, including, but without limitation, uniform caps, aviation caps, and shop and railroad caps; and including the manufacture of cap visors, bands, and brims, and the manufacture of sweat bands from any material other than leather."

This definition more specifically described the character of apparel whose manufacture was to be subject to the requirements of the wage order. The manufacture of hats and caps bore a reasonable relation to the apparel industry; and the Administrator's inclusion of the defendants' manufacture within the Caps and Cloth Hats Division was justified, not only because the defendants manufactured hats and caps, but particularly because they employed the manufacturing processes specified in the industry definition. The determination that the defendants should be placed within the Caps and Cloth Hats Division was within the Administrator's discretion. Opp Cotton Mills, Inc. v. Admin-

istrator, supra, 312 U.S. at pages 143–145, 61 S.Ct. at page 532, 85 L.Ed. 624.

The definition applicable to the Hat industry was intended to include the manufacture of head-wear not embraced by the definition applicable to the Caps and Cloth Hats Division of the apparel industry.[1]

The defendants concede that the definition relating to the Caps and Cloth Hats Division is sufficiently specific to include their manufacture of hats and caps but argue that the definition applicable to the division must be read in the light of the definition of the industry. As already indicated, we think that the definition applicable to the apparel industry reasonably embraced the manufacture of hats and caps, which are apparel if intended to be worn. Furthermore, the defendants' hats and caps were made by the cutting and sewing process of manufacture.

In Pearson et al. v. Walling, 8 Cir., 138 F.2d 655, 658, 659, where the manufacture of bows and arrows was held to be within the definition of the Lumber and Timber Products industry, the court said that the Administrator "is only required to outline with reasonable clarity and certainty the general limits or extent of the industry sought to be covered, and that, where this has been done and general opportunity for hearings, on notice, has been duly afforded, there is no legal injustice involved in administratively applying the order to any product which, by sound implication and natural interpretation, falls within the boundaries that have been set, and which has not been specifically excepted therefrom." There is no question in this case of any want of notice to the defendants or lack of opportunity to be heard.

■■ The Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., is remedial (cf. United States v. Darby, 312 U.S. 100, 115, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430) and is, therefore, to be liberally construed in order to effectuate its intent and purpose. And, as the competently promulgated orders of the Administrator have the force and effect of legislative enactments, by the same token, such orders are also to be liberally construed. Ralph Knight, Inc., v. Mantel, 8 Cir., 135 F.2d 514, 517.

■ The measure of the Administrator's discretion is large. Southern Garment Mfrs. Ass'n Inc., v. Fleming, 74 App. D.C. 228, 122 F.2d 622, 629. The fact that a particular manufacture is ordinarily considered as coming within one industry rather than another imposes no duty upon the Administrator to adopt the ordinary classification. Nor does the fact that other manufactures within the industry, as defined by the Administrator, require a higher degree of skill in their production or sell for substantially higher prices preclude the Administrator's comprehensive interpretation of the classification. Opp Cotton Mills, Inc. v. Administrator, supra, at page 149, 61 S.Ct. at page 534, 85 L.Ed. 624. When, therefore, the Administrator has placed an interpretation upon his order as being intended to include the manufacture of certain articles, it could be only where his interpretation is capricious and arbitrary that a court would be warranted in interfering with the order by placing a different construction upon it. The instant case affords no basis for such action. There is no evidence that the classification did not bear a reasonable relation to the objectives to be attained. See Columbus & G. Ry. Co. v. Administrator, 5 Cir., 126 F.2d 136, 139.

■ For the most part the defendants rest their contention that they do not come within the scope of the several orders here involved on the ground that the trade does not consider them as manufacturers of hats and caps. As to that, the court below appropriately pointed out that the defendants did not petition under Sec. 10(a) of the Act for court review of the orders, for which there was still time after the Administrator notified the defendants that they were subject to the orders. Where the wage order applicable to the apparel industry has been so reviewed, its validity has been sustained. Southern Garment Mfrs. Ass'n Inc. v. Fleming, supra; and Andree & Seedman, Inc. v. Administrator, 74 App.D.C. 240, 122 F.2d 634. The defendants are therefore not in position to question the competency of the Administrator's orders.

The cases arising under interpretations of tariff descriptions which the defendants

---

[1] The order relative to the Hat industry embraced:

"(a) The manufacture from any material of headwear for men or boys, except caps and cloth hats:

"(b) The manufacture of felt hat bodies from fur or wool for men's, boys', women's or children's hats; * * *."

cite are notably not in point. In keeping with the well-known rule which calls for the strict construction of taxing acts, the question whether a higher or lower tariff duty is to be imposed upon an article according to varying applicable descriptions is ordinarily resolved in favor of the importer and against the government. American Net & Twine Co. v. Worthington, 141 U.S. 468, 474, 12 S.Ct. 55, 35 L.Ed. 821, and Hartranft v. Wiegmann, 121 U.S. 609, 616, 7 S.Ct. 1240, 30 L.Ed. 1012.

The decree of the District Court is affirmed.