## WALLING v. BROOKLYN BRAID CO., Inc.

### No. 74.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1945.

William S. Tyson, Solicitor, and Bessie Margolin, Asst. Solicitor, both of Washington, D. C., Irving Rozen, Regional Attorney, of New York City, Faye Blackburn, of Washington, D. C., and James V. Altieri and Samuel Gorin, both of New York City, Attys., United States Department of Labor, for plaintiff-appellee.

Schlesinger & Krinsky, of New York City (Samuel Bushwick, of New York City, of counsel), for appellant.

Before L. HAND, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The Administrator of the Wage and Hour Division of the Department of Labor sued the appellant in the District Court for the Southern District of New York to obtain a permanent injunction restraining it from violating the Wage Order for the Embroideries Industry, Part 633. The court enjoined the appellant pendente lite from permitting any of its employees to do what is called home work in the production of bows and tassels for interstate commerce without first obtaining special home-work certificates for such employees; from paying any of its employees engaged in the production of goods for interstate commerce wages at rates less than forty cents an hour; and from failing to keep and preserve adequate and accurate records as

prescribed by the Administrator, Title 29, Chap. V, Code of Federal Regulations; Part 516. This appeal is from that order.

The appellant, who is a jobber of straw braids and bands for men's hats and a manufacturer of small bows and tassels which are sewn across the sweat band of men's hats, contends that it is not within the above mentioned wage order; and, indeed, it is not unless its manufacture of the bows and tassels brings it within the definition of the Embroideries Industry in § 633.4 of the order. It does not, however, contest the validity of the order itself or raise any question as to its having been promulgated without due compliance with the required statutory procedure including notice, provided the definition, properly construed, is broad enough to cover the manufacture of its bows and tassels. It also argues that it is within the wage order for the Miscellaneous Textile, Leather, Fur, Straw and Related Products Industries. However, no injunction for violation of that order was granted and we need not directly decide more on that phase of this appeal than whether the appellant is or is not within definition of the order for the Embroideries Industry. That reads: "The production of all kinds of hand and machine-made embroideries and ornamental stitchings, including, but not by way of limitation, tucking, shirring, smocking, hemstitching, hand rolling, fagoting, Bonnaz embroidery, appliqueing, crochet beading, hand drawing, machine drawing, rhinestone trimming, sequin trimming, spangle trimming, eyelets, passementerie, pleating, the application of rhinestones and nailheads, stamping and perforating of designs, Schiffli embroidery and laces, burnt-out laces and velvets, Swiss hand-machine embroidery, thread splitting, embroidery thread cutting, scallop cutting, lace cutting, lace making-up, making-up of embroidered yard goods, straight cutting of embroidery and cutting out of embroidery, embroidery trimmings, bindings (not made in textile establishments), pipings and emblems; provided, however, that (1) the foregoing when produced or performed by a manufacturer of a garment, fabric or other article, and (2) the manufacture of covered buttons and buckles, shall not be included."

Bows and tassels are not specifically mentioned in the definition but the omission of those particular words is not decisive. If a fair and reasonable interpretation of the language used covers the kind of bows and tassels which the appellant manufactures that is enough. Pearson v. Walling, 8 Cir., 138 F.2d 655. The definition includes the production of passementerie. That means trimming. Webster's International Dictionary. And on the same authority, we find that trimming may be defined as "That which serves to trim, make complete, ornament, or the like; * * * usually in pl.; as, trimmings for a hat; * * *."

The definition expressly covers rhinestone, sequin and spangle trimming, and we believe that by adding passementerie to the particular kinds of trimming mentioned there was included trimming of a class at least extensive enough to cover these little bows and tassels used to embellish the inside bands on men's hats.

Moreover, the interpretation of the wage order by the Administrator is also to be given due weight which will "in a particular case * * * depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all of those factors which give it power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164. And where the interpretation the Administrator has given the order embraces the production of particular articles, the courts should make that effective unless it appears that his action was arbitrary or capricious. Walling v. Cohen, 3 Cir., 140 F.2d 453.

Though the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., does not expressly provide for enforcement by injunction, that remedy is available to the Administrator. The action taken below was based upon the general powers of courts of equity to grant injunctions and, as in cases between private litigants, the public interest is always to be considered and protected when such a court in the exercise of its sound discretion grants or withholds injunctive relief. Central Kentucky Gas Co. v. Railroad Commission, 290 U.S. 264, 271, 54 S.Ct. 154, 78 L.Ed. 307; United States v. Morgan, 307 U.S. 183, 194, 59 S.Ct. 795, 83 L.Ed. 1211. In a case like this it is self-evident that the public interest is directly concerned in the proper enforcement of a valid wage order. Good administration of the statute is in the public interest and that will be promoted by taking timely steps when necessary to

prevent violations either when they are about to occur or prevent their continuance after they have begun. The trial court is not bound by the strict requirements of traditional equity as developed in private litigation but in deciding whether or not to grant an injunction in this type of case should also consider whether the injunction is reasonably required as an aid in the administration of the statute, to the end that the Congressional purposes underlying its enactment shall not be thwarted. See Skidmore v. Swift Co., supra, 323 U.S. at 133–140, 65 S.Ct. 161–164.

We think there was such proof at least prima facie. The appellant does not seriously dispute that there was adequate evidence of its violation of the order in respect to the employment of homeworkers without first obtaining the special certificates required provided the wage order was applicable. The proof as to its failure to keep and preserve accurate records is also clearly sufficient. That regarding rates of wages paid its homework employees, though not so strong, is found in the affidavits of inspectors of the Wage and Hour Division who interviewed employees and made some time tests which fairly indicated that at the piece work rate the employees were paid they did not receive at least the minimum wages of forty cents an hour. It is true that some parts of the affidavits were hearsay but taken as a whole they show at least with reasonable certainty that the appellant was violating the order in this respect and its opposing affidavits did not make such a conclusion by the trial court at all unreasonable. That afforded a sufficient basis for its exercise of discretion to prevent further violations fairly to be expected and made out the prima facie case. Bowles v. Montgomery Ward, 7 Cir., 143 F.2d 38.

Affirmed. ·

FRANK, Circuit Judge (concurring).

The notice given by the Administrator of the public hearing which led to his order was worded as was that part of his order quoted in the foregoing opinion. I think it gave adequate notice of the hearing to appellants because of the meaning of the word "passementerie" as it should have been understood by persons like appellants, for reasons stated in the opinion.

I think it desirable to say that we are not here deciding that, if the wording of the notice of hearing had not been sufficient to be thus understood by such persons, the notice would have been valid (so that the order would have bound appellants) merely because of administrative interpretations.[1] For I think that the doctrine of Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, and of other cases dealing with the weight to be accorded such interpretations, relate to such interpretations of statutes or of regulations or orders made pursuant to statutes, and not of a notice of an administrative hearing.

---

[1] Certainly not any such interpretations which were unpublished before the hearing began.